**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

RAY VERNOR MCGHEE, :
:
    Plaintiff, :
:
v. :    CASE NO. 4:07-CV-124 (CDL)
:    42 U.S.C. § 1983
DR. OLAKUNLE AINA, et al. :
:
    Defendants. :

## REPORT AND RECOMMENDATION

Before the court is Defendants' Motion for Summary Judgment filed on December 4, 2007. (R-25). Plaintiff's Response to Defendant's Motion for Summary Judgement was thereafter filed on January 24, 2008. (R-34).

## Legal Standard

Federal Rule of Civil Procedure 56, which deals with motions for summary judgment provides in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Summary judgment can only be granted if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Fed. R..Civ. P. 56 (c); Warrior Tombigee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). While the evidence and all factual inferences therefrom must be viewed by the court

in the light most favorable to the party opposing the motion, the party opposing the granting of the motion for summary judgment cannot rest on his pleadings to present an issue of fact but must make a response to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts present in the case which must be presented to a jury for resolution. *See Van T. Junkins & Assoc., Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 658 (11th Cir. 1984).

Specifically, the party seeking summary judgment bears the initial burden to demonstrate to the court the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show that there is an absence of any genuine issue of material fact. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913 (11th Cir. 1993). In determining whether the moving party has met this burden, the court must review the evidence and all factual inferences drawn from this, in the light most favorable to the nonmoving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

If the moving party successfully meets this burden, the burden then shifts to the nonmoving party to establish by going beyond the pleadings, that there are genuine issues of material fact to be resolved by a fact-finder. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Summary judgment is appropriate when the non-movant "fails to make a showing sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Tidmore Oil Co. v. BP Oil Co./Gulf Prods. Div., a Div. of BP Oil Co.*, 932 F.2d 1384. 1387-88 (11th Cir.1991), cert. denied, 502 U.S. 925, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991).

## DISCUSSION

Plaintiff[1] alleges that in December 2004, while being screened for HIV and gonorrhea, Defendant Macon used contaminated needles, infecting Plaintiff with an unknown disease. (R-1-2, p. 5). Plaintiff asserts that due to the mystery disease, he began having kidney problems in February 2005. (R-1-2, p. 11). Plaintiff asserts, that despite the mystery disease, he has repeatedly been told by Defendant Aina that he has no health problem. *Id*. Plaintiff contends that no blood work was performed on March 2, 2007, when it was discovered that Plaintiff had a swollen prostate. *Id*. Plaintiff contends that the Defendants are being deliberately indifferent and denying him equal protection by refusing Plaintiff the opportunity to receive a second medical opinion from an outside source, regarding "what di[s]ease [Plaintiff] probably had contracted from the contaminated needles(s)." (R-1-2, p. 15).

Plaintiff seeks relief in the amount of $775,000 for pain and suffering and further seeks the following injunctive relief: 1) to have Defendants "arrange for a second opinion

---

[1] The complaint was originally filed with Ray Vernor McGhee as the co-Plaintiff and his mother, Mattie Ruth Clemons as the Plaintiff. (R-1). However, as Ms. Clemons was not asserting a violation of her own rights, but those of her son, she failed to meet the first requirement under 42 U.S.C. § 1983 and was dismissed as a party. (R-5).

specialist examination" to determine Plaintiff's unknown health problem and to provide any necessary treatment; 2) the entry of a permanent injunction requiring Defendants to pay for any treatment the specialist deems necessary; and 3) order the Defendants to "consult with utilization management for all cost of treatment that a urologist specialist deems [] necessary to manage, control, and call all health problems that [are] discovered with any disease [Plaintiff] might have contracted." (R-1-1, p. 21-23).

In Defendants' Motion for Summary Judgement, Defendants argue that they are entitled to summary judgment based on five grounds. (R-25-2). First, Defendants argue that summary judgment should be granted because Defendant's alleged actions do not evidence deliberate indifference to a serious medical need. *Id*. Second, Defendants argue summary judgment is appropriate because Plaintiff's claim that he was injected with "contaminated" needles is barred by the statute of limitations. *Id*. Third, Defendants argue that they are entitled to qualified immunity. *Id*. Fourth, Defendants argue that summary judgment is appropriate because 42 U.S.C § 1983 does not allow a claim under a theory of vicarious liability. *Id*. Finally, Defendants argue that Plaintiff's Eighth Amendment claim must be dismissed because he cannot show an affirmative causal connection between Defendants' action and his alleged injury.

**Statute of Limitations**

A statute of limitations begins to run when a cause of action accrues. Although 42 U.S.C. § 1983 does not contain a statute of limitations, the Supreme Court has held that the state limitation period applicable to personal injury actions should be applied to all actions

4

brought pursuant to 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). The United States Court of Appeals for the Eleventh Circuit has held that the Georgia two-year personal injury limitations period for injuries to the person under O.C.G.A. § 9-3-33 applies to § 1983 actions in a Georgia district court. *Mullinax v. McElhenney*, 817 F.2d 711 (11th Cir. 1987) (construing O.C.G.A. § 9-3-33).

Plaintiff alleges that Defendant Macon infected him with an unknown disease when he used contaminated needles during a routine blood test in December 2004[2]. (R-1-2, p. 10). Plaintiff asserts in his statement of claim that the incident took place on March 2, 2007, when Dr. Aina discovered Plaintiff had a "swollen prostate." (R-1-3, p. 4). Plaintiff states that his swollen prostate is connected to the unknown disease he was allegedly infected with in December of 2004. *Id*. Plaintiff's actual complaint, however, contends that he began having health problems with his kidneys and private organs in February of 2005, due to the unknown disease he contracted from the contaminated needles in December 2004. (R-1-2, p. 11-14, R-1-4, p. 3). The statute of limitations begins to run "from the date the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Brown v. Ga. Bd. Of pardons and Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (internal quotations and citation omitted). Therefore, the statute of limitations on Plaintiff's claim began to run in February 2005, when the facts that

---

[2] Starting in November of 2004, the Georgia Department of Corrections began testing inmates for HIV, syphilis, and cholesterol during their annual physicals. (R-25-5, p. 3). Plaintiff's annual physical took place in December 2004. (R-25-5, p. 4). All tests were normal. (R-25-5, p. 3).

would support a cause of action became apparent, and ended in February 2007. Plaintiff's complaint was dated August 2, 2007, five months after the statute of limitations expired on his claims. Therefore, Plaintiff's complaint is barred by the applicable statute of limitations. The liberal construction that is granted pro se litigants in filing their complaints does not mean that they are allowed lack of compliance with deadlines that are imposed by law. "Liberal construction does not mean liberal deadlines." *Wayne v. Jarvis*, 197 F.3d 1098, 1104 (11th Cir. 1999). Thus, it is recommended that Plaintiff's complaint be dismissed for a lack of jurisdiction as to all claims.

## **Deliberate Indifference**

In order to prevail on his constitutional claim and to recover in this case, Plaintiff must establish that defendants were deliberately indifferent to his serious medical needs. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Prison officials or prison doctors cannot be held accountable "under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. 837, 114 S. Ct. 1979 (1994). "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as infliction of punishment." *Id.* at 848. "Thus,

the official must have a subjectively sufficiently culpable state of mind." *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (internal citations omitted). "Likewise, in addition to the subjective awareness of the relevant risk, *Estelle* requires that plaintiff show more than mere negligence to establish a violation of the Eighth Amendment. . . ." *McElligott*, 182 F.3d 1248, 1255 (11th Cir. 1999); citing *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). The medical care provided a prisoner is not required to be "perfect, the best obtainable, or even very good." *Brown v. Beck*, 481 F. Supp. 723, 726 (S.D.Ga. 1980). However, a "delay in treatment can, depending on the circumstances and the length of the delay, constitute deliberate indifference." *Hinson v. Edmond*, 192 F.3d 1342, 1348 (11th Cir. 1999) (citing *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 (11th Cir. 1997); *Harris v. Coweta County*, 21 F.3d 388, 394 (11th Cir. 1994)).

The United States Supreme Court has held that to show an objectively serious deprivation, it is first necessary to demonstrate an objectively "serious medical need," one that, if left unattended, "pos[es] a substantial risk of serious harm." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). The Eleventh Circuit has further held that a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003); (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1187 (11th Cir.1994)). In the current case, therefore, Plaintiff is first required to show that he has a medical need and that it is serious: meaning that the need(s) mandated treatment at that time, and that if left untreated, they were capable

of causing serious harm.

If a plaintiff is able to establish a serious medical need, he must then establish that a prison official acted with deliberate indifference to a serious medical need, by showing that the defendant had subjective knowledge of a risk of serious harm; that the defendant disregarded the risk; and that his conduct was more than mere negligence. *Brown v. Johnson,* 387 F.3d 1344, 1351 (11th Cir.2004).

Here, Plaintiff has wholly failed to establish a serious medical need related to his kidneys or swollen prostate.[3] Plaintiff asserts that he has a mystery disease which he claims he "probably" contracted from some allegedly contaminated needles in December 2004. (R-1-2, p.15). Although Plaintiff was seen no less than eighteen times by the physician, and had blood and laboratory tests performed no fewer than six times, no illness or disease was discovered which could be linked to the allegedly contaminated needles. (R-25-5, p. 5-10).

Additionally, Plaintiff has failed to show that the Defendants disregarding any risk of serious harm. Plaintiff was seen on March 11, 2005, at which time he demanded that someone from the Center for Disease Control (CDC) come and draw his blood. (R-25-5, p. 5). "A rectal examination was performed, which revealed a mild prostate enlargement that is common for males of [Plaintiff's] age." *Id.* There were no indications or suspicions of cancer noted. *Id.* On April 29, 2005, Plaintiff was seen during a routine hypertension clinic

---

[3] Plaintiff was diagnosed with hypertension in 2001, and has been on blood pressure medication since that time. (R-25-5, p. 4). Plaintiff has not made any claims regarding deliberate indifference or equal protection that relate to the treatment of his hypertension.

8

appointment. *Id*. During that appointment, Plaintiff stated that "something" was wrong with him, but could not say what was wrong with him, nor could Plaintiff point to any specific symptoms. *Id*. In response to allegation, Plaintiff received a complete examination. *Id*. Laboratory tests, including a complete metabolic panel, a complete blood count, and urine sample, were ordered. (R-25-5, p. 6). All tests/panels came back normal. *Id*. On June 24, 2005, Plaintiff was seen by Defendant Aina and again requested to be sent to St. Francis or Columbus Hospital to have his blood tests repeated. *Id*. Defendant Aina explained to Plaintiff that both hospitals use the same lab for blood work as RSP. *Id*. On October 3, 2005, Plaintiff was seen at sick call, complaining of blood in his urine. *Id*. A check of Plaintiff's urine revealed no blood or infection. *Id*. On October 13, 2005, Plaintiff was seen for a routine hypertension clinic appointment. *Id*. Plaintiff stated he had no complaints. *Id*. Plaintiff received a full examination and blood tests were performed, including a complete metabolic panel and PSA (prostate). *Id*. All results were normal. (R-25-5, p. 6-7). On October 27, 2005, Plaintiff was seen at sick call for replacement of his eyeglasses. (R-25-5, p. 7). On December 6, 2005, Plaintiff received a full physical examination, with the exception of a rectal exam, which Plaintiff refused. *Id*. On February 14, 2006, Plaintiff was seen for a sinus problem and prescribed chlorpheniramine. *Id*. On March 9, 2006, Plaintiff was seen at a routine hypertension clinic appointment. *Id*. Plaintiff again requested to be sent to an outside clinic. *Id*. Plaintiff stated he did not feel "okay," but could not identify a problem or particular ailment. *Id*. Plaintiff was seen again at the hypertension clinic on June 8, 2006, where he received a complete examination. (R-25-5, p. 8). On that date,

laboratory tests were also performed which included: CMP (kidney, liver); CBC (anemia); TSH (thyroid); PSA (prostate); and UA (urine). *Id*. All tests revealed normal limits. *Id*. On November 13, 2006, Plaintiff was seen at sick call and again requested to be sent to an outside medical facility. *Id*. Defendant Aina advised Plaintiff "that unless there was something specifically wrong with him, that it would be clinically inappropriate to send him to another medical facility." *Id*. Plaintiff was seen on December 6, 2006, at a routine hypertension clinic visit, during which he received an examination. *Id*. Plaintiff's pre-clinic blood tests were discussed with him. *Id*. On March 1, 2007, Plaintiff was seen at a requested sick call, indicating that he had lost weight due to his problems, including increased urine frequency. (R-25-5, p. 8-9). Plaintiff received a rectal examination, which revealed the same mild prostate enlargement, and an x-ray of his chest, which was negative for infection or cancer. (R-25-5, p. 9). Plaintiff was started on a prescription (Cardura) for the enlarged prostate. *Id*. Plaintiff was seen on March 15, 2007, for a follow-up visit. *Id*. Plaintiff stated that he was feeling better and doing better with his urination, but Plaintiff stated that he now felt like he smelled like feces. *Id*. Plaintiff reported "[n]o untoward symptoms with regard to the Cardura" and "[l]aboratory tests revealed no abnormalities." *Id*. On March 28, 2007, Plaintiff was seen at sick call complaining of abdominal pain. *Id*. Plaintiff received an examination and was given a prescription for pain medication. *Id*. Defendant Aina stated that the examination and symptoms did not show any clinically significant abnormalities. *Id*. On May 30, 2007, at a routine hypertension clinic visit, Plaintiff stated he was doing better with his urination and laboratory tests were clinically

unchanged from Plaintiff's baseline tests. (R-25-5, p. 10). On July 12, 2007, Plaintiff was seen at sick call complaining of something protruding from his anus. *Id*. A direct visual test suggested hemorrhoids and Plaintiff was given a prescription to treat such at that time. *Id*. On November 26, 2007, Plaintiff was seen at a routine hypertension clinic visit and again demanded to be sent to an outside clinic. *Id*. All blood work revealed normal limits. *Id*.

Plaintiff has failed to make a sufficient showing that he had a serious medical need or that Defendants were deliberately indifferent to any serious need. Plaintiff states in conclusory terms that the Defendants refused to let him be seen by an outside medical facility in order to cover-up the mystery illness/disease he received from "contaminated" needles. Other than Plaintiff's bald accusations, there is absolutely no evidence that he was ever injected with contaminated needles, much less, that he developed a disease from said injection. Furthermore, there is no indication that Defendants had subjective knowledge of a risk of serious harm, nor that the defendants disregarded the risk. Therefore, Plaintiff's claims against all three defendants for deliberate indifference to a serious medical need, must fail.

## **CONCLUSION**

To preclude summary judgment once the moving party has provided evidence which shows that no issues of fact remain, the non-moving party must establish by going beyond the pleadings that there are still genuine issues of material fact to be resolved by a fact-finder. *See, Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). As stated above,

11

genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. Federal Rule of Civil Procedure 56 provides that affidavits, among other discovery evidence, will be used in determining whether any issues of fact remain which should be submitted to the trier of fact for final determination. Both parties filed Motions for Summary Judgment in this case. Having submitted sworn statements and provided credible evidence, the Defendants, in their role as moving party, have met their burden of proof. That is, they have demonstrated to the court the basis for their motion which they believe show that there is an absence of any genuine issue of material fact. In response, when the burden of proving that the Defendants were not entitled to a judgment as a matter of law shifted to the Plaintiff, he merely made conclusory allegations, without supporting his contentions. In *Barfield v. Brierton*, the court held that Federal Rule of Civil Procedure 56(e) requires:

> [T]hat when a motion for summary judgment is made and supported according to the rule, the nonmoving party's response must set forth specific facts showing a genuine issue for trial. If the party's response consists of nothing more that a repetition of his conclusory allegations, the district court must enter summary judgment in the moving party's favor. *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981); *cert. denied* 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982)

883 F.2d 928, 934 (11th Cir. 1989). This evidence was examined in a light more favorable to the non-moving party as is required by the holding in *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). As Plaintiff has failed to overcome his burden of proof, it is recommended that Defendants' Motion for Summary Judgment be **GRANTED**.

Furthermore, Plaintiff's action is found to be frivolous.  An action is frivolous when the plaintiff's legal theory or factual contentions lack an arguable basis either in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989).  An action is "frivolous" for purposes of § 1915(e)(2) if "it is without arguable merit either in law or fact." *Napier v. Preslicka,* 314, F.3d 528, 531 (11th Cir. 2002), *cert. denied*, 124 S.Ct. 1038 (2004).

**ACCORDINGLY**, because it appears that Defendants are entitled to judgment as a matter of law, **IT IS THE RECOMMENDATION** of the United States Magistrate Judge that the Motion for Summary Judgment filed on their behalf be **GRANTED** and that Plaintiff's complaint be dismissed as frivolous.  Pursuant to 28 U.S.C. § 636(b)(1), the Plaintiff  may serve and file written objections to this **RECOMMENDATION** with the United States District Judge, WITHIN TEN (10) DAYS after being served with a copy thereof.

**SO RECOMMENDED**, this 19th  day of February, 2008.

S/ G. MALLON FAIRCLOTH
UNITED STATES MAGISTRATE JUDGE

mZc